IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GEORGIA HENSLEY, Individually
and as Class Representative on Behalf
of All Similarly Situated Persons, et
al.                                                                                                               PLAINTIFFS

VS.                               Case No. 05-CV-4034

COMPUTER SCIENCES CORPORATION,
et al.                                                                                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Amended Motion to Remand. (Doc. 280) Separate Defendants Allstate Insurance Company, Allstate Indemnity Company, and Encompass Insurance Company (hereinafter collectively referred to as "Allstate") and Separate Defendants Acadia Insurance Company, Berkley Regional Insurance Company, Great River Insurance Company, Union Insurance Company, Union Standard Insurance Company, and Union Standard Lloyds have filed responses. (Doc. 341 and 346) Plaintiffs filed a reply. (Doc. 378) The Court held a hearing on the motion on September 16, 2005. The Court finds the motion ripe for consideration.

### I. BACKGROUND

On April 28, 2005, Allstate removed this putative class action suit, alleging this Court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a) and the Class Action Fairness Act of 2005[1] (hereinafter "CAFA"). Plaintiffs argue this Court lacks subject matter jurisdiction over their suit because complete diversity among the parties does not exist, Allstate cannot show any defendants are fraudulently joined in the suit so that the Court could exclude them when considering their citizenship for diversity of citizenship purposes, and the amount in controversy

---

[1] Doc. 1.

does not exceed $75,000. Plaintiffs also argue their suit was "commenced" prior to the effective date of CAFA.

Plaintiffs complaint alleges claims for civil conspiracy, breach of contract, breach of the covenant of good faith and fair dealing/bad faith, unjust enrichment, fraud, and constructive fraud and seeks declaratory and injunctive relief. The civil conspiracy claim is at the crux of the remand issues. The factual allegations regarding the conspiracy claim begin with Separate Defendants Computer Sciences Corporation, Insurance Services Office, Inc., ISO Claims Services, Inc., and ClaimIQ, Inc.[2] which own and license computer software programs called Colossus, Claims Outcome Advisor, and InjuryIQ.[3] These software programs are used by Allstate and the other insurance defendants to evaluate bodily injury claims of their insureds.[4] An example of how these software programs work is that after an adjuster inputs information about an insured's bodily injury claim into Colossus, the software generates two dollar numbers, one low and one high, that represent a settlement range for an insured's bodily injury claim.[5]

Plaintiffs allege the Software Defendants conspired with the other defendants to use the software programs to reduce the amount of money paid on bodily injury claims and to withhold from the insureds alleged faults with the software programs that led to underpayment of bodily injury claims.[6] Plaintiffs allege the conspiracy has the following distinguishing characteristics: 1) substantially uniform policies and practices among the insurance companies named as

---

[2] The Court will refer to these defendants collectively at times as "the Software Defendants."

[3] Doc. 1, Plaintiff's Fifth Amended Complaint attached to Notice of Removal, ¶¶ 149, 161.

[4] *Id.* at ¶ 158.

[5] *Id.* at ¶ 149.

[6] *Id.* at ¶¶ 162, 166, 187.

defendants[7] regarding the use of the software programs and the demands of the Software Defendants for confidentiality and secrecy about the software programs; 2) sharing of information between the Software Defendants and Insurance Defendants about the use, operation, tuning, calibration and practices of the software programs; 3) secrecy agreements between the Software Defendants and the Insurance Defendants that concealed information from Plaintiffs and putative class; and 4) adoption of reciprocal non-disclosure policies assuring that the Insurance Defendants would not disclose the software programs' scheme to Plaintiffs or putative class.[8] Plaintiffs also allege the Software Defendants and Insurance Defendants continued to use the software programs after they discovered errors in the programs that reduced the amount of settlements for bodily injury claims.[9]

## II. DISCUSSION

**A.  Diversity of Citizenship**

District courts have original jurisdiction over civil actions where the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1). Jurisdiction under § 1332 requires complete diversity among the parties.  *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720 (8th Cir. 2001).  Diversity jurisdiction attaches only when all parties on one side of the litigation are of different citizenship from all of those on the other side.  *Stouffer Corp. v. Breckenridge*, 859 F.2d 75 (8th Cir. 1988).  There is no dispute that the alignment of parties in Plaintiffs' complaint destroys complete diversity.  Therefore, Allstate

---

[7] All named defendants are either software companies or insurance companies. The Court will refer to insurance companies named as defendants collectively at times as "the Insurance Defendants."

[8] Plaintiffs' Fifth Amended Complaint, ¶ 167, 190.

[9] *Id.* at 188.

relies on its argument that 576 of the 584 defendants are fraudulently joined, and therefore, the Court may ignore the fraudulently joined defendants' citizenship when determining whether complete diversity exists. If the Court accepts Allstate's argument complete diversity among the 12 non-fraudulent joined defendants and plaintiffs exists. The Court would then have to determine whether the requisite amount in controversy exists. Allstate's claim of fraudulent joinder is based on two arguments: (1) Plaintiffs' civil conspiracy claim fails as a matter of law, and (2) Plaintiffs cannot state a claim against 576 of the 584 named defendants. The Court sees the arguments as interrelated and can address the two issues together.

Under Arkansas law, to prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive, or immoral means, to the injury of another. *Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004); *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002); *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Allen*, 356 Ark. at 413, 155 S.W.3d at 689; *Dodson*, 345 Ark. at 445, 47 S.W.3d at 876. For example, even though a person may not be liable as a direct actor in interfering with an existing contract, he may incur liability as a participant in a conspiracy which results in one or more overt acts by others constituting actionable interference. *Mason v. Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969). Under Arkansas law, a civil conspiracy is a vehicle used to make co-conspirators "joint tort-feasors" for resulting damage; the liability of a particular conspirator does not depend upon the extent to which he profited or his activity in promoting the conspiracy. *See Stewart v. Hedrick*, 205 Ark. 1063, 172 S.W.2d 416 (1943); *Wilson v. Davis*, 138 Ark. 111,

211 S.W. 152 (1919).

Under Arkansas law, then, if Plaintiffs prevail on any one of their other claims against an insurance company that actually insured them, they could also hold the other insurance companies jointly and severally liable for their damages so long as the proved their conspiracy claim. More specifically, if a named plaintiff prevailed on either her breach of contract, breach of the covenant of good faith and fair dealing/bad faith, unjust enrichment, or fraud claims against a defendant that issued her a policy of insurance, Arkansas law then gives her the opportunity to prove a conspiracy among the other named insurance companies that did not insure her. If she successfully proves her conspiracy claim, then, each insurance company that was a part of the conspiracy would be considered a joint tort-feasor. Therefore, the Court has no hesitancy in finding Plaintiffs have standing to pursue their claims against the insurance companies named as defendants even though those defendants did not issue insurance policies to the Plaintiffs.

Allstate also argues Plaintiffs' conspiracy allegations, as stated in their Fifth Amended Complaint, are not specific enough and should be dismissed. As mentioned above, the conspiracy claim is the only claim through which insurance companies that did not issue policies to Plaintiffs are legitimately defendants in this suit. The Court must scrutinize the conspiracy allegations to ensure these types of defendants are not called upon to needlessly defend this suit.

The crux of the alleged conspiracy is that the Software Defendants and Insurance Defendants conspired to reduce the amount paid to insureds for bodily injury claims. Plaintiffs allege this activity was unlawful because it deprived them of contractual benefits in the insurance policies. More specifically, Plaintiffs allege the Insurance Defendants went about setting claim standards, adjusting claims and creating benchmarks in the same or similar manner and sharing

5

information. Plaintiffs also allege the Insurance Defendants save the same amount of money in the reduction certain claims. Plaintiffs points to these actions as evidence of a conspiracy. While the conspiracy claim may be hard to prove, the Court believes Plaintiffs have sufficiently pled their claim and should have the opportunity to pursue the conspiracy claim. Therefore, the Court finds no defendant is fraudulently joined in this suit. The citizenship of all defendants must be considered for diversity of citizenship purposes. The parties agree that this alignment of parties destroys diversity of citizenship. Therefore, the Court finds the parties in this action are not diverse and it lacks jurisdiction under § 1332(a)(1). Since the Court finds the parties are not diverse, it need not address whether the amount in controversy requirement is met.

**B. CAFA**

Allstate also believes this Court has jurisdiction over this lawsuit under CAFA. This suit began on February 7, 2005, when Plaintiffs filed their putative class action complaint in the Circuit Court of Miller County, Arkansas. Apparently Plaintiffs had not served any defendant with process when Allstate removed the case on April 28, 2005. Allstate argues that Plaintiffs only filed their complaint on February 7, 2005 to avoid federal jurisdiction under CAFA, and did not really begin litigating this suit for weeks. Allstate asks the Court to ignore the February 7, 2005 filing date because of Plaintiffs' laxity in serving the defendants with process. Removal statutes are to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868 (1941); *see also Nichols v. Harbor Venture, Inc.*, 284 F.3d 857 (8th Cir. 2002). In *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232 (10th Cir. 2005), the Tenth Circuit Court of Appeals strictly construed § 9 of CAFA, holding the term "commenced" in that section refers to the date the civil action was first filed in state court, not the date that it was removed to federal court. The *Pritchett* Court first looked to the language of the statute. *Pritchett*, 404 F.3d at 1235.

It observed that traditionally, but with some exceptions, under Fed. R. Civ. P. 3, a civil action is commenced when it is first brought in an appropriate court. *Id.*

To the extent the term "commenced" is ambiguous, the *Pritchett* Court analyzed legislative history of CAFA and found the history to be persuasive in giving the term a narrow construction. *Id*. at 1235-7. The removal provisions in the original bill presented in the House of Representatives applied to both cases "commenced" on or after the enactment date and to cases in which a class certification order is entered on or after the enactment date. *Id.* at 1235-6, *citing* H.R. 516, 109th Cong. § 7 (2005). Neither the Senate's version of the bill nor the final statute passed by both houses of Congress allowed removal of civil actions certified on or after the enactment date. *Id.* at 1236, *citing* S. 5, 109th Cong. § 9 (2005); § 9, 119 Stat. at 14. It is clear then that Congress' intent was to narrow the removal provisions of CAFA from the broader language in the House's version. Also, two statements from sponsoring legislators, Senator Dodd and Rep. Goodlatte, indicate CAFA was not designed to apply to currently pending civil actions. *Id.* at 1236, *citing* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[CAFA] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merk in the wake of the Vioxx withdrawal.") The *Pritchett* Court observed floor statements are usually given little weight when construing statutes, but these statements were consistent with a normal statutory construction analysis. *Id.* at 1236-7.

As noted in *Pritchett*, the argument that "commence" for removal purposes means the date of removal is supported by a line of cases interpreting the term when Congress increased the

7

amount-in-controversy requirement for diversity of citizenship cases. *Id.* at 1237-8, *citing Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 170 F.Supp. 412 (D.C. Tex. 1958); *Hunt v. Transport Indem. Ins. Co.*, No. 90-00041, 1990 WL 192483, *5-6 (D. Haw. July 30, 1990) (unpublished). Contemporaneous authority analyzing similar cases, however, concluded "commenced" meant the date of filing in state court. *Kieffer v. Travelers Fire Ins. Co.*, 167 F.Supp. 398 (D. Md. 1958); *see also Rhinehart v. Cincinnati, Inc.*, 176 F.Supp. 7 (E.D. Mich. 1989). Since these cases did not interpret CAFA, the *Pritchett* Court believed these cases were only relevant by analogy, and concluded cases like *Lorraine Motors* actually supported a construction of "commenced" as being the date of filing. *Pritchett*, 404 F.3d at 1237.

This Court agrees with the *Pritchett* decision. The Court does believe this is the type of class action Congress now intends to be heard in federal court by expanding a district court's jurisdiction over putative class action suits. However, the Court cannot ignore the solid legal analysis of *Pritchett* and decide it has jurisdiction over this case. There is no room in CAFA for the Court to "toll" the date of commencement merely because Plaintiffs did not serve any defendant with process for over two and a half months. Fed. R. Civ. P. 4(m) allows 120 days to serve a defendant after a complaint is filed. The Arkansas rule is the same. *See* Ark. R. Civ. P. 4(i). At the time it passed CAFA, Congress knew state and federal procedural rules allowed a good number of weeks past the filing of the complaint for service of process, yet it made no mention that such time should be excluded when determining the date an action was "commenced" under CAFA.

Also, the Court is mindful that this case, unlike *Pritchett*, was removed within the 30 day deadline set forth in 28 U.S.C. § 1446(b). The public policy section of the *Pritchett* decision is, therefore, inapplicable to this suit. *See Pritchett*, 404 F.3d at 1238. However, the fact that

Allstate timely complied with § 1446 has little bearing on the statutory construction of the term "commenced" in § 9 of CAFA. The Court does not believe this action was "commenced" on the date Allstate or any other defendant was served with process or the date Allstate removed it to this Court. Instead, the Court finds this action was "commenced" for the purposes of CAFA on February 7, 2005, when Plaintiffs filed their complaint in the Circuit Court of Miller County. The Court finds CAFA does not apply to this case, and CAFA does not give this Court jurisdiction over this matter.

The Court has the same reasoning now as it did when it issued its decision in *Lane's Gifts and Collectibles, L.L.C., et al v. Yahoo!, Inc., et al*, 05-CV-4027. Defendants in *Lane's Gifts* filed a Petition for Permission to Appeal the Court's decision to remand the case to state court because CAFA did not apply. (05-CV-4027, Docs. 93) The Eighth Circuit Court of Appeals recently denied the petition (05-CV-4027, Doc. 95), perhaps tacitly agreeing with *Pritchett*.

### III. CONCLUSION

For reasons discussed herein and above, the Court finds Plaintiffs' Motion to Remand should be and hereby is **granted.** This case is hereby remanded to the Circuit Court of Miller County, Arkansas.

IT IS SO ORDERED, this 28th day of October, 2005.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Court